# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

ESMERALDA BECERRA, individually and
as representatives of a class of participants and
beneficiaries and on behalf of the Bank of
America 401K Plan,

        Plaintiff,

    v.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA CORPORATION
CORPORATE BENEFITS COMMITTEE; and
DOES 1-10, inclusive,

        Defendants.

Case No. 3:24-cv-00921

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Bank of America Corporation and Bank of America Corporation Corporate Benefits Committee ("Defendants"), pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the allegations contained in the First Amended Complaint filed by Esmeralda Becerra ("Plaintiff"), and assert their affirmative defenses as follows:[1]

## NATURE OF ACTION

1. This action arises out of defendants Bank of America Corporation and Bank of America Corporation Corporate Benefits Committee's ("Defendants"), wrongful use, for their own benefit, of assets in their employees' 401k retirement plan. As set forth herein, Defendants used forfeited plan assets to reduce its employer contribution obligations, rather than for the benefit of plan participants, in violation of the Employment [*sic*] Retirement Income Security Act ("ERISA") and Defendants' fiduciary responsibilities. In this action, Plaintiff seeks damages in connection with Defendants' wrongful conduct in misusing forfeited Plan assets for its own benefit.

---

[1] The First Amended Complaint contains various headings and/or subheadings. Defendants do not consider these to be substantive allegations to which a response is required. However, to the extent that a responsive pleading is required, Defendants deny any and all allegations within any such heading or subheading.

**RESPONSE:** Defendants deny that they violated ERISA, their fiduciary responsibilities, or any other law, deny that Plaintiff is entitled to any damages, and deny the remaining allegations.

## JURISDICTION AND VENUE

2. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

**RESPONSE:** Paragraph 2 asserts legal conclusions that require no response.

3. The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each defendant has minimum contacts with the United States. See 29 U.S.C. § 1132(e)(2).

**RESPONSE:** Paragraph 3 asserts legal conclusions that require no response.

4. The claims of Plaintiff and the putative class arise out of the Plan issued, administered, and/or implemented in this District.

**RESPONSE:** Defendants admit that the Bank of America 401(k) Plan ("Plan") is administered in the Western District of North Carolina, and deny the remaining allegations.

## PARTIES

5. Plaintiff Esmeralda Becerra is an individual who, during the relevant period, resided in Riverside, California. Plaintiff was at all relevant times participating in the 401k Plan at issue.

**RESPONSE:** Defendants lack the information necessary to confirm or deny Plaintiff's residency. Defendants admit Plaintiff was a participant in the Plan.

6. The Bank of America 401K Plan (the "Plan") is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a)

**RESPONSE:** Paragraph 6 asserts legal conclusions that require no response. To the extent a response is required, Defendants admit that the Plan is a defined contribution individual account pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34).

2

7.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Bank of America Corporation is authorized to conduct and is actually conducting business in the State of California, and is the sponsor and/or administrator of the Plan.

**RESPONSE:** Defendants admit that Bank of America Corporation ("Bank of America") is authorized to conduct and actually conducts business in California, and that it is the Plan sponsor and administrator.

8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Bank of America Corporation Corporate Benefits Committee is a committee that was created by Defendants to assist in the management of the Plan and/or Plan assets. Plaintiff is informed and believes, and on that basis alleges, that the Committee is the administrator of the Plan, and was delegated with the authority to direct the trustee with respect to crediting and distributing Plan assets.

**RESPONSE:** Paragraph 8 asserts legal conclusions and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response.  Answering further, Defendants admit that Bank of America created the Bank of America Corporation Corporate Benefits Committee ("the Committee") and the Committee has certain authority with respect to the management of the Plan.  Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 8.

9.      Defendants Bank of America Corporation and Bank of America Corporation Corporate Benefits Committee will collectively be referred to as "Bank of America."

**RESPONSE:** Defendants admit that Bank of America and the Committee will collectively be referred to as "Bank of America" for the purposes of Plaintiff's First Amended Complaint.

10.      Defendants each exercised discretionary authority and/or control over the management and/or distribution of the Plan, and are fiduciaries of the Plan, including pursuant to 29 U.S.C. §1002(21)(A)

**RESPONSE:** Paragraph 10 asserts legal conclusions and purports to characterize the terms of the written Plan document, which speak for themselves, and requires no response.  To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 10.

11. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore sue such defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe and thereon alleges that each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief regarding Plaintiff's knowledge about the identities or alleged actions of "Does 1 through 10." To the extent a response is required, Defendants deny the allegations contained in Paragraph 11.

12. Plaintiff is informed and believes and thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their codefendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

**RESPONSE:** Defendants deny the allegations in Paragraph 12.

## FACTUAL ALLEGATIONS

**A.     The Plan**

13. The Bank of America 401(k) Plan (the "Plan") is a defined contribution, individual account plan under ERISA. In such a plan, each participant's benefit depends on the assets in his or her account, including contributions and investment gains or losses.

**RESPONSE:** Paragraph 13 purports to characterize the terms of the written Plan document, which speak for themselves, and requires no response. To the extent a response is required, Defendants admit that the Plan is a defined contribution, individual account plan, deny any characterization contrary to the terms of the Plan, and deny all remaining allegations in Paragraph 13.

14. Bank of America Corporation ("Bank of America") is the Plan sponsor, and the Corporate Benefits Committee (the "Committee") serves as the Plan's designated administrator.

Both are fiduciaries under ERISA, because they exercise discretionary authority or control over the management and disposition of Plan assets.

**RESPONSE:** Paragraph 14 asserts legal conclusions that require no response. To the extent a response is required, Defendants admit that Bank of America is the Plan sponsor and admit that the Committee is the Plan's designated administrator. Defendants deny the remaining allegations in Paragraph 14.

15. The assets of the Plan are held in a trust fund pursuant to 29 U.S.C. §1103(a).

**RESPONSE:** Paragraph 15 asserts legal conclusions that require no response and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants admit that generally speaking the assets of the Plan are held in a trust fund.

16. The Plan is funded by a combination of employee/participant contributions (usually paid through wage withholdings) and employer contributions, which are deposited into the Plan's trust fund. Once deposited into the Plan's trust fund, all employee/participant and employer contributions become assets of the Plan.

**RESPONSE:** Paragraph 16 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants admit that the Plan is funded in part by wage withholdings by Plan participants and employer contributions. Defendants deny all remaining allegations in Paragraph 16.

17. Participants in the Plan immediately vest in their own contributions, and earnings on their contributions. Plaintiff is informed and believes, and on that basis alleges, that participants vest in the employer contributions after 3 years of service.

**RESPONSE:** Paragraph 17 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 17.

18.    Participants who have a break in service prior to full vesting of employer contributions, forfeit the balance of unvested employer contributions, and Defendants exercise control over how these Plan assets are thereafter allocated.

**RESPONSE:** Paragraph 18 asserts legal conclusions and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response.  To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 18.

### B.    Plan Funding, Contributions, Vesting and Forfeitures

19.    The Plan helps Bank of America employees save for retirement primarily through two funding sources: (1) voluntary deferrals by participants (through wage withholdings), and (2) employer contributions funded by Bank of America. The employer contributions generally fall into two categories: (i) matching contributions for participants who elect to contribute to the Plan, Bank of America provides matching contributions; and (ii) Bank of America also makes non-elective "Annual Company Contributions" to eligible participants, regardless of whether they choose to contribute themselves.

**RESPONSE:** Paragraph 19 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response.  To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 19.

20.    Participant deferrals (and any investment earnings on those deferrals) are always fully vested. Bank of America's matching contributions are also fully vested from the outset. Other employer contributions (e.g., Annual Company Contributions) generally vest after three years of service.

**RESPONSE:** Paragraph 20 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response.  To the extent a response is required, Defendants deny any characterizations contrary to the terms of the Plan and deny all remaining allegations in Paragraph 20.

21.    If a participant's employment terminates before completing the applicable vesting period, any unvested contributions are forfeited. These "forfeitures" are Plan assets and must be reallocated or applied in accordance with ERISA and the Plan's governing terms. Per the Plan document, forfeitures must first be used to restore any previous forfeitures for employees who

6

return to Bank of America within a specified period. If any residual forfeitures remain, they may be used "as a source of any type of Participating Employer contributions for the Plan Year" or "to pay reasonable expenses of the Plan," at the Committee's discretion.

**RESPONSE:** Paragraph 21 asserts legal conclusions and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterizations contrary to the terms of the Plan and deny all remaining allegations in Paragraph 21.

### C. Plan Expenses and Defendants' Payment of Costs

22. As of December 31, 2023, the Plan provided participants with a total of 31 investment alternatives. Investment alternatives include 5 mutual funds, 24 collective investment funds (including 10 LifePath Index funds), a Stable Value Fund and the Bank of America Corporation Common Stock Fund.

**RESPONSE:** Paragraph 22 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterizations contrary to the terms of the Plan and deny all remaining allegations in Paragraph 22.

23. The Plan holds a portion of its assets in the Stable Value Master Trust (the "Master Trust"). The Master Trust provides a single collective investment vehicle for the Stable Value Fund investment option of the Plan and The Bank of America Transferred Savings Account Plan (collectively known as Participating Plans). The Plan's percentage interest in the Master Trust was 96.97% and 96.82% as of December 31, 2023 and 2022, respectively.

**RESPONSE:** Paragraph 23 purports to characterize the terms of the written Plan documents and other written documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterizations contrary to the terms of those written document and deny all remaining allegations in Paragraph 23.

24. The assets of the Master Trust are held by Bank of America, N.A., as Trustee.

**RESPONSE:** Paragraph 23 asserts legal conclusions and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To

the extent a response is required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 23.

25. The terms of the underlying investment contracts in the Master Trust are benefit responsive, providing a guarantee by the issuer to pay principal plus accrued interest in response to benefit-related requests for payment. These investment contracts include: (i) fixed maturity synthetic guaranteed investment contracts; (ii) constant duration synthetic guaranteed investment contracts; and (iii) insurance company separate account guaranteed investment contracts.

**RESPONSE:** Paragraph 25 purports to characterize the terms of the written Plan documents and other written documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterizations contrary to the terms of those written document and deny all remaining allegations in Paragraph 25.

26. The value of the Plan's interest in the Master Trust (which, again, is the investment vehicle for the Stable Value Fund investment option of the Plan) is based on the beginning value of the Plan's interest in the Master Trust plus actual contributions and allocated investment income less actual distributions and allocated administrative expenses.

**RESPONSE:** Paragraph 26 purports to characterize the terms of the written Plan documents and other written documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterizations contrary to the terms of those written document and deny all remaining allegations in Paragraph 26.

27. Those underlying contracts deduct administrative expenses "off the top," reducing participants' returns and demonstrating that Plan assets do, in fact, cover certain administrative fees. The Master Trust's portion of these fees for 2023 was $328,216 allocated to the Plan. Because these expenses reduce the amount in the Master Trust, they are obviously being paid with Plan assets.

**RESPONSE:** Paragraph 27 asserts legal conclusions and purports to characterize the terms of the written Plan documents and other written documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterization contrary to the terms of those written documents, deny that participants pay any Plan administrative expenses, and deny all remaining allegations in Paragraph 27.

8

28.     For 2023, $5.6 billion of the Plan's total investments of $53.95 billion million were held in the Master Trust (i.e., the Stable Value Fund), which is over 10% of the Plan's total investments. Indeed, from 2019 to 2023, the Plan's investment in the Master Trust has never gone below 10%:

|  | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|
| Plan Investment in Stable Value Fund | $5,353 | $5,986 | $5,986 | $6,190 | $5,602 |
| Total Plan Investments | $43,201 | $47,856 | $56,660 | $46,469 | $53,951 |
| Percentage in Stable Value Fund | 12.39% | 12.51% | 10.56% | 13.32% | 10.38% |

*(in millions of dollars.)*

**RESPONSE:** Paragraph 28 purports to characterize the terms of the written Plan documents and other written documents, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterization contrary to the terms of those written documents and deny all remaining allegations in Paragraph 28.

29.     In 2022, the Stable Value Fund was the top fund invested in Plan participants:

**Plan assets as of 12/31/2022**
(from Bank of America's 2023 filing of Form 5500)

| Top 10 Investments | % |
|---|---|
| Stable Value Fund | 14% |
| Vanguard S&P 500 Index | 13% |
| Bank of America stock | 12% |
| Dodge & Cox Stock Fund | 8% |
| TRP Inst Lg Cap Growth | 8% |
| Vanguard Inst Extended Market Index | 7% |
| Blackrock Equity Dividend Fund | 4% |
| MFS International Growth Fund | 4% |
| Blackrock US Fun. Lg Cap Growth | 3% |
| Western Asset Core Bond Trust | 2% |

See the Bank of America 401(k) page for additional plan details and value of holdings.

*Source: 2022 Form 5500 for Bank of America 401k plan*

**RESPONSE:** Paragraph 29 purports to characterize the terms of 2022 Form 5500, which speak for themselves, and requires no response. To the extent a response is required, Defendants

deny any characterization contrary to the terms of the written document and deny all remaining allegations in Paragraph 29.

30. For the year ending December 31, 2021, a total of $1,548,352 in expenses was deducted from the Stable Value Fund. For 2022, expenses were $1,567,681 and in 2023 they were $1,523,277.

**RESPONSE:** Paragraph 30 asserts legal conclusions and purports to characterize the terms of the 2021 Form 5500, which speak for themselves, and requires no response. To the extent a response is required, Defendants deny any characterization contrary to the terms of the written documents and deny all remaining allegations in Paragraph 30.

31. Plaintiff held $460.74 in the Stable Value Fund as of December 31, 2022 and she held $705.42 in Stable Value Fund as of December 31, 2024. Because the expenses in the Stable Value Fund are distributed pro-rata across all participants in that Fund, in 2022 and 2024, Plaintiff paid (by a reduction in her investment income) for administrative expenses that could have otherwise been paid by forfeitures that Defendants instead used to reduce their employer contributions.

**RESPONSE:** Defendants admit the allegations in the first sentence of Paragraph 31. Defendants deny the remaining allegations in Paragraph 31.

> **D.      Defendants' Improper Use of Forfeitures and Obligations Under the Plan and ERISA**

32. Section 5.4(d)(iv) of the Plan provides:

> Reallocation of forfeitures: The forfeitures during a Plan Year pursuant to this Subsection, as adjusted to reflect investment gains, earnings and losses, shall be reallocated for the Plan Year in accordance with Subsection (e) of this Section, to the extent required by Subsection (e) of this Section. To the extent not so required, the forfeitures (as so adjusted) shall be a source of any type of Participating Employer contributions for the Plan Year, including without limitation safe harbor Matching Contributions and QNECs, ***or shall be used to pay reasonable expenses of the Plan***, as determined by the Committee in its sole discretion.

(Emphasis added.)

**RESPONSE:** Paragraph 32 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is

required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 32.

33. Section 9.1(a) of the Plan provides:

Trust Assets: All of the assets of the Plan shall be held in the Trust. All assets of the Trust Fund, whether representing contributions made by a Participating Employer or trust funds of any employee benefit plan of any Participating Employer which has adopted or shall adopt the Plan by merging into it and the Trust Fund hereunder, or income derived therefrom, ***shall be held by the Trustee for the benefit of Participants and their Beneficiaries, and for defraying reasonable expenses of administering the Plan***, and, except as provided in Section 12.2 and otherwise permitted by ERISA and the Code, ***<u>in no event shall it be possible at any time prior to the satisfaction of all liabilities</u>, fixed or contingent, under the Plan with respect to such Participants and Beneficiaries, <u>for any part of the assets of the Trust</u>, whether corpus or income, <u>to be</u> paid to, <u>used for</u>, or returned to the <u>Participating Employers</u> or used for or diverted to any purpose whatsoever other than for the exclusive benefit of such Participants and their Beneficiaries <u>and defraying reasonable expenses of administering the Plan</u>, except as*** provided in this Subsection.

(i) In the case of a contribution under the Plan made by the Participating Employers by a mistake of fact, such contribution shall be returned to the Participating Employers, reduced by any losses attributable thereto but without any interest or other increment thereon, as soon as practicable but not later than one year after payment thereof.

(ii) Unless the Participating Employers expressly determine otherwise with respect to a contribution, each contribution that is made under the Plan by the Participating Employers is hereby expressly conditioned upon its deductibility by the Participating Employers under Code Section 404, and, to the extent such contribution deduction is disallowed and there was a good faith mistake in determining the deductibility of the contribution, the contribution shall be returned to the Participating Employers within one year after the date of disallowance.

(Emphasis added.)

**RESPONSE:** Paragraph 33 purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. To the extent a response is

required, Defendants deny any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 33.

34. Defendants have used millions of dollars in forfeited Plan assets to offset employer contributions. These forfeiture amounts are "Plan assets" that should have been used exclusively for participants' and beneficiaries' benefit or to defray Plan expenses, rather than to lower Bank of America's ongoing contribution costs.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 34.

35. Defendant's use of Plan forfeited assets to offset its employer contributions instead of paying for Plan expenses violates the Plan including, but not limited to, Section 9.1 of the Plan.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 35.

36. By using forfeited Plan assets to offset employer contributions that Bank of America otherwise would have had to fund, Defendants reduced their own corporate contribution obligations at the expense of the Plan and its participants – thereby violating ERISA's fiduciary duties, anti-inurement provision, and prohibitions on certain transactions.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 36.

37. Defendants placed their own interests above those of Plan participants in deciding to use forfeitures for new employer contributions instead of applying them to Plan expenses or reallocating them more directly to participants' accounts.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 37.

38. Defendant's use of Plan forfeited assets to offset its employer contributions instead of paying for Plan expenses violates ERISA statues, including but not limited ERISA's fiduciary standards of loyalty and prudence (29 U.S.C. §§ 1104(a)(1)(A)-(B)), the anti-inurement rule (29 U.S.C. § 1103(c)(1)), and ERISA's prohibited transaction provisions (29 U.S.C. § 1106).

**RESPONSE:** Defendants deny the allegations contained in Paragraph 38.

39. Defendants' use of forfeited assets to offset their employer contributions instead of paying for Plan expenses harmed the Plan, Plaintiff and other participants in the Plan by reducing Plan assets, and not allocating forfeited funds to participants' accounts, and/or for the benefit of participants.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 39.

40. All Plan participants were harmed collectively because the Plan's overall assets were diminished or improperly diverted, contrary to ERISA. By using forfeitures to satisfy Bank of America's employer contribution obligations, Defendants decreased the aggregate pool of Plan assets that would otherwise have been available for participants' benefit or to cover Plan costs.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 40.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on behalf of herself and all others similarly situated as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiffs seek certification of a class defined as follows:

> All participants and beneficiaries of Bank of America 401K Plan, who participated in the plan at anytime within the longest statute of limitations for each claim pled, excluding Defendants and members of he [*sic*] Committees.

**RESPONSE:** Defendants admit that Plaintiff purports to sue on behalf of the class defined in Paragraph 41, but deny that class treatment is appropriate.  Defendants deny the remaining allegations in Paragraph 41.

42.     Plaintiff and the Class reserve the right under Federal Rule of Civil Procedure Rule [*sic*] 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

**RESPONSE:** Paragraph 42 asserts legal conclusions and arguments that require no response.  To the extent a response is required, Defendants deny that class treatment is appropriate and deny that there is subclass for which class treatment is appropriate.

43.     This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

**RESPONSE:** Paragraph 43 asserts legal conclusions and arguments that require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 43.

### E.     Numerosity

44.     The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of participants and beneficiaries Plan who have been similarly affected.

**RESPONSE:** Paragraph 44 asserts legal conclusions and arguments that require no response.

### F. Commonality

45. Common questions of law and fact exist as to all members of the proposed class.

**RESPONSE:** Paragraph 45 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 45.

### G. Typicality

46. The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Defendants' wrongful conduct.

**RESPONSE:** Paragraph 46 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 46.

### H. Adequacy of representation

47. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions.

**RESPONSE:** Paragraph 47 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 47.

### I. Superiority of class action

48. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed Class is not practicable, and common questions of law and fact exist as to all class members.

**RESPONSE:** Paragraph 48 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 48.

49. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**RESPONSE:** Paragraph 49 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 49.

### J.     Rule 23(b) requirements

50.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct.

**RESPONSE:** Paragraph 50 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 50.

51.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**RESPONSE:** Paragraph 51 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 51.

52.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**RESPONSE:** Paragraph 52 asserts legal conclusions and arguments that require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 52.

**FIRST CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**29 U.S.C. § 1104(A)(1)**

53.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

**RESPONSE:** Defendants restate and reincorporate their responses to all prior allegations as though fully set forth herein.

54.     Under 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties owed to the Plan "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan."

**RESPONSE:** Paragraph 54 asserts legal conclusions that require no response. To the extent a response is required, Defendants admit that Plaintiff has accurately quoted portions of 29 U.S.C. § 1104(a)(1)(A), but deny the remaining allegations in Paragraph 54.

55. Defendants breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) by utilizing forfeited Plan assets for its benefit, rather than the benefit of Plan participants. Defendants have chosen to apply forfeited Plan assets to decrease future employer contributions, instead of using those funds for the benefit of Plan participants. In doing so, Defendants placed their interests above the interests of Plan participants and beneficiaries.

**RESPONSE:** Defendants deny the allegations in Paragraph 55.

56. Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

**RESPONSE:** Paragraph 56 asserts legal conclusions that require no response. To the extent a response is required, Defendants admit that Plaintiff has accurately quoted portions of 29 U.S.C. § 1104(a)(1)(B), but deny the remaining allegations in Paragraph 56.

57. Defendants breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by declining to use the forfeited funds in the plan for the benefit of Plan participants, and instead using such Plan assets to reduce the Company's own contributions to the Plan. Defendants failed to engage in a reasoned and impartial decision making process in deciding to use the forfeited funds in the Plan to reduce the Company's own contribution expenses. Defendants failed to act in a prudent manner, in the best interest of the Plan's participants, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

**RESPONSE:** Defendants deny the allegations in Paragraph 57.

58. Defendant's [*sic*] have a fiduciary duty to comply with ERISA statutes. 29 U.S.C. § 1104(a)(1)(D). Defendants breached their fiduciary duty by using forfeited Plan assets in violation of ERISA statues, as alleged herein.

**RESPONSE:** The first sentence of Paragraph 58 asserts legal conclusions that require no response. To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 58. Defendants deny the remaining allegations in Paragraph 58.

59.     Defendants' wrongful conduct, as alleged herein, caused the Plan to receive fewer future employer contributions than it would otherwise received, and depleted Plan assets.

**RESPONSE:** Defendants deny the allegations in Paragraph 59.

60.     As a direct and proximate cause of Defendants' fiduciary breaches, the Plan suffered injury and losses and, pursuant to 29 U.S.C. § 1109, Defendants' are liable for such losses.

**RESPONSE:** Defendants deny the allegations in Paragraph 60.

61.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses under 29 U.S.C. § 1105(a).

**RESPONSE:** Defendants deny the allegations in Paragraph 61.

**SECOND CLAIM FOR RELIEF**
**Breach of ERISA's Anti-Inurement Provision**
**29 U.S.C. §1103(C)(1)**

62.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

**RESPONSE:** Defendants restate and reincorporate their responses to all prior allegations

as though fully set forth herein.

63.     Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

**RESPONSE:** Paragraph 63 asserts legal conclusions that require no response.  To the

extent a response is required, Defendants deny that Plaintiff has accurately quoted portions of 29

U.S.C. § 1103(c)(1).

64.     The funds in a participant's accounts that are forfeited when a break in service occurs prior to full vesting are assets of the Plan.

**RESPONSE:** Paragraph 64 asserts legal conclusions that require no response.  To the

extent a response is required, Defendants deny the allegations in Paragraph 64.

65.     By using Plan assets for its own benefit, to reduce its own future employer contributions to the Plan, thereby saving itself millions of dollars in contribution costs, Defendants caused the assets of the Plan to inure to the benefit of the employer in violation of 29 U.S.C. § 1103(c)(1).

**RESPONSE:** Defendants deny the allegations in Paragraph 65.

66.     Pursuant to 29 U.S.C. § 1109(a), Defendants are liable for the Plan losses resulting from violation of ERISA's anti inurement provision as alleged in this claim, and must restore to the Plan all profits secured through their use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

**RESPONSE:** Defendants deny the allegations in Paragraph 66.

**THIRD CLAIM FOR RELIEF**
**Breach of ERISA's Prohibited Transactions**
**29 U.S.C. § 1106**

67.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

**RESPONSE:** Defendants restate and reincorporate their responses to all prior allegations as though fully set forth herein.

68.     29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan." Defendants are parties in interest, as that term is defined under 29 U.S.C. §1002 (14), because they are Plan fiduciaries and because Defendant Bank of America is the employer of Plan participants.

**RESPONSE:** Paragraph 68 asserts legal conclusions that require no response.  To the extent a response is required, Defendants admit that Plaintiff has accurately quoted portions of 29 U.S.C. § 1106(a)(1).  Defendants deny the remaining allegations in Paragraph 68.

69.     29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

**RESPONSE:** Paragraph 69 asserts legal conclusions that require no response.  To the extent a response is required, Defendants admit that Plaintiff has accurately quoted portions of 29 U.S.C. § 1106(b).

70. Defendants violated these prohibitions by utilizing these Plan assets as a substitute for future employer contributions to the Plan, thereby saving themselves millions of dollars in contribution expenses. As alleged herein, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest, and Defendants dealt with the assets of the Plan in their own interest and for their own account.

**RESPONSE:** Defendants deny the allegations in Paragraph 70.

71. As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

**RESPONSE:** Defendants deny the allegations in Paragraph 71.

72. Pursuant to 29 U.S.C. § 1109(a), Defendants are liable for the Plan losses resulting from violation of ERISA's prohibition on these transactions, as alleged in this claim, and must restore to the Plan all profits secured through their use of Plan assets, and is subject to other equitable or remedial relief as appropriate.

**RESPONSE:** Defendants deny the allegations in Paragraph 72.

**FOURTH CLAIM FOR RELIEF**
**Failure to Monitor Fiduciaries**

73. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

**RESPONSE:** Defendants restate and reincorporate their responses to all prior allegations as though fully set forth herein.

74. Defendant Bank of America Corporation oversaw the overall governance of the Plan and had authority to delegate fiduciary responsibilities. Defendant Bank of America Corporation created the Committee to assist in Plan management and delegated to the Committee the authority to direct the trustee with respect to crediting and distribution of Plan assets.

**RESPONSE:** Paragraph 74 asserts legal conclusions and purports to characterize the terms of the written Plan documents, which speak for themselves, and requires no response. Answering further, Defendants admit that Bank of America created the Committee, and the Committee has certain authority with respect to the management of the Plan. Defendants deny

any characterization contrary to the terms of the Plan and deny all remaining allegations in Paragraph 74.

75.     Defendant Bank of America Corporation had a duty to monitor the person(s) to whom it delegated fiduciary responsibilities, and to take prompt action to protect the plan and correct any breaches of fiduciary duty or violation of ERISA statutes.

**RESPONSE:** Paragraph 75 asserts legal conclusions that require no response.  To the extent that a response is required, Defendants deny the allegations in Paragraph 75.

76.     Defendant Bank of America Corporation breached its duty to monitor the fiduciaries to whom it delegated responsibility for Plan management by, among other things, unreasonably failing to monitor the Committee's management and use of forfeited funds, failing to take steps to ensure that its fiduciary duties and ERISA statutes were properly complied with respect to Plan assets, and permitting Defendants to continuously use forfeited funds for the benefit of the employer, rather than Plan participants, as alleged herein.

**RESPONSE:** Defendants deny the allegations in Paragraph 76.

77.     As a direct and proximate cause of Defendant's breach of its duty to monitor fiduciaries, the Plan suffered losses, as alleged herein.

**RESPONSE:** Defendants deny the allegations in Paragraph 77.

## REQUEST FOR RELIEF

Wherefore, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, prays for judgment against Defendants as follows:

1.  That Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

2.  That Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

3.  That all assets and profits secured by Defendants as a result of each violation of ERISA described above are to disgorged;

4.  For an accounting to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

5.  Removal of the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

6. Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

7. Certify the case as a class action;

8. Award attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

9. Award class representatives a service award.

10. Order the payment of interest to the extent it is allowed by law; and

11. Grant other equitable or remedial relief as the Court deems appropriate.

**RESPONSE:** Defendants deny the allegations set forth in the Prayer for Relief, including the unnumbered "Wherefore" Paragraph and each and every subpart thereof; deny that Plaintiff, the Plan, or the putative class are entitled to any of the relief sought in the Prayer for Relief, including the unnumbered "Wherefore" Paragraph and each and every subpart thereof; and deny that Plaintiff is entitled to any relief whatsoever, on behalf of herself, any other person(s), or the Plan.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiff, and expressly denying any and all wrongdoing, Defendants allege the following defenses to the First Amended Complaint:

### First Defense

One or more of the Defendants are not, or were not, acting as a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A), with respect to certain purported misconduct alleged by Plaintiff.

## Second Defense

The claims of Plaintiff and/or any other members of the putative class who are subject to an arbitration agreement may be required to arbitrate their claims.

## Third Defense

The claims of Plaintiff and/or any other members of the putative class are barred, in whole or in part, by their lack of standing.

## Fourth Defense

The claims of Plaintiff and the members of the putative class against Defendants are barred in whole or in part by the applicable statutes of repose or limitations, including but not limited to ERISA § 413, 29 U.S.C. § 1113.

## Fifth Defense

The claims of Plaintiff and/or any other members of the putative class who are bound by a waiver, covenant not to sue or release of claims against Defendants may be barred.

## Sixth Defense

Any losses alleged by Plaintiff were not caused by any fault, act, or omission by Defendants as set forth in ERISA § 409(a), 29 U.S.C. § 1109(a), and elsewhere, but were caused by circumstances, entities, or persons, including Plaintiff, for which Defendants are not responsible and cannot be held liable.

## Seventh Defense

Plaintiff and all other participants received all of the benefits to which they are entitled under the Plan and Defendants complied with the Plan terms.

## Eighth Defense

Defendants acted consistently and in reliance upon the applicable federal regulations and guidance on forfeitures, including but not limited to 26 C.F.R. § 1.401-7 and 88 Fed. Reg. 12282, including the provisions providing that Defendants "may rely on these proposed regulations for periods preceding the applicability date."

## Ninth Defense

A hypothetical prudent fiduciary would have allocated forfeitures as Defendants did and Defendants' conduct was reasonable, prudent, and consistent with how other fiduciaries behave in similar circumstances.

## Tenth Defense

Defendants' actions were both procedurally and substantively prudent and cannot give rise to fiduciary liability under ERISA § 409(a), 29 U.S.C. § 1109(a).

## Eleventh Defense

Defendants did not violate ERISA's anti-inurement provision under 29 U.S.C. § 1103(c)(1) by "providing benefits to participants."

## Twelfth Defense

No "transaction" occurred within the scope of ERISA's prohibited transaction provisions set forth in 29 U.S.C. §§ 1106(a) and 1106(b)(1).

## Thirteenth Defense

Forfeited contributions fall within 29 U.S.C. § 1103's exception for mistaken contributions.

### Fourteenth Defense

Plaintiff, and members of the putative class, would be unjustly enriched by any monetary recovery, and they have received all of the benefits to which they are entitled.

### Fifteenth Defense

Plaintiff cannot prove any cognizable loss, damage, or injury as a result of the conduct alleged in the First Amended Complaint.

### Sixteenth Defense

The claims alleged and the relief sought in this action are barred in whole or in part by the equitable doctrines of laches, acquiescence, consent, ratification, estoppel, and/or similar doctrines.

### Seventeenth Defense

Plaintiff is not entitled to certification of this action as a class action because he cannot satisfy the requirements of Federal Rule of Civil Procedure 23(a) or (b) in this case.

### Eighteenth Defense

Defendants acted at all times and in all respects in good faith and with due care and did not engage in any conduct which would constitute a breach of fiduciary duty or a failure to monitor fiduciaries.

### Nineteenth Defense

The claims of Plaintiff and the putative class members are barred by their failure to exhaust administrative remedies.

\* \* \*

Defendants presently have insufficient knowledge or information to form a belief as to whether there are additional defenses or affirmative defenses other than those stated above and

24

have not knowingly or intentionally waived any applicable defenses or affirmative defenses. Defendants explicitly reserve the right to assert, and hereby give notice that they intend to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserve the right to amend their Answer to assert any such defense.

\* \* \*

WHEREFORE, having answer Plaintiff's First Amended Complaint in its entirety, Defendants pray for judgement as set forth below:

a. An order dismissing the remaining claims with prejudice;

b. An order awarding costs and expenses to Defendants, including attorney's fees; and

c. Any such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 9, 2025

/s/ Robert A. Muckenfuss

**MCGUIREWOODS LLP**
Robert A. Muckenfuss (NC Bar No. 28218)
Zachary L. McCamey (NC Bar No. 53540)
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
Tel.: (704) 343-2000
Fax: (704) 343-2300
Email: rmuckenfuss@mcguirewoods.com
Email: zmccamey@mcguirewoods.com

**MORGAN, LEWIS & BOCKIUS LLP**
Jeremy P. Blumenfeld*
Mary Ann F. McNulty*
2222 Market Street
Philadelphia, PA 19103

25

Tel.: (215) 963-5000
Fax: (215) 963-5001
Email: jeremy.blumenfeld@morganlewis.com
Email:  mary.mcnulty@morganlewis.com

Matthew A. Russell*
110 N. Wacker Dr., Suite 2800
Chicago, IL 60606
Tel.: (312) 324-1000
Fax: (312) 324-1001
Email: matthew.russell@morganlewis.com

*Admitted Pro Hac Vice
 Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2025, a true and correct copy of the foregoing was

filed electronically through the Court's CM/ECF electronic filing system.

/s/ *Robert A. Muckenfuss*
Robert A. Muckenfuss